## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

CHANCE SANDERS,

       **Plaintiff,**

v.                                                   Case No. 22-CV-069-JFH-JAR

CPT. RIDEOUT, et al.,

       **Defendants.**

## OPINION AND ORDER

Plaintiff Chance Sanders, a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this federal civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Dkt. No. 1. Defendants Rideout, Beck, Lasater, and CoreCivic, Inc. ("Defendants") moved for summary judgment, arguing that Sanders failed to exhaust his administrative remedies before initiating this action. Dkt. No. 22. Sanders responded in opposition to the motion. Dkt. No. 23. For the following reasons, the Court GRANTS summary judgment in favor of Defendants

## LEGAL STANDARD

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.'" *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). A fact is material if it is "essential" under the substantive law "to the proper disposition of the claim." *Id.* (internal quotation marks omitted). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera,* 506 F.3d 1303, 1309 (10th Cir. 2007). The

burden then shifts to the nonmovant to "'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Id.* The assertion that a fact is or cannot be genuinely disputed must be supported by citation "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). The Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (internal quotation marks omitted).

When a defendant asserts an affirmative defense in a motion for summary judgment, the defendant "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 746 (10th Cir. 2014) (internal quotation marks omitted). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the plaintiff fails to make this showing, "the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.*

## DISCUSSION

Sanders claims Defendants violated his Fifth, Eighth, and Fourteenth Amendment rights on December 25, 2021, while Sanders was housed at the Davis Correctional Facility (DCF), in

Holdenville, Oklahoma.  Dkt. No. 1 at 2, 5-6.[1]  Sanders alleges that Defendant Rideout "helped inmates pr[o]cure weapons" to use against Sanders and "let them tell [Sanders] how they would kill [him] and rape [him]."  Dkt. No. 1 at 5.  Sanders claims Defendant Rideout saw the inmates with the weapons, heard them say they were going to beat, torture, and rape Sanders, and yet "did nothing to stop it."  *Id.*  Sanders claims Defendant Rideout "gave the inmates a syringe and a vile of adrinalin [sic] . . . to keep [Sanders] alive to torture [him] longer."  *Id.* at 6.  Sanders further alleges a general lack of oversight at DCF to protect inmates against corrupt prison staff, as well as a failure of prison officials to take accusations such as his seriously.  *Id.*

Defendants seek summary judgment on the affirmative defense that Sanders failed to exhaust his administrative remedies prior to filing this action, in contravention of the Prison Litigation Reform Act (PLRA).  Dkt. No. 22 at 9-15.  The PLRA prescribes that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA exhaustion requirement requires proper exhaustion," including "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006).  The prisoner must use "all steps that the agency holds out, and [do] so *properly*."  *Id.* at 90 (internal quotation marks omitted).  Under the PLRA, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing [his] § 1983 claim" in federal court.  *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).  "Once a defendant proves that a plaintiff failed to exhaust [his administrative remedies], . . . the onus falls on the plaintiff to show that

---

[1]  The Court's citations refer to the CM/ECF header pagination.

remedies were unavailable to him." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

"Administrative remedies are deemed unavailable if, among other things, 'prison administrators

thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019).

Defendants have submitted an affidavit from DCF's Grievance Coordinator, who attests

that she reviewed Sanders' grievance submissions "from the date of his first allegation through the

date of the filing of his lawsuit"—December 25, 2021, through February 24, 2022.  Dkt. No. 22-2

at 3.  She states that Sanders filed three (3) grievances during this time but failed to properly

exhaust any issues relevant to his federal claims.  *Id.* at 3, 6.  Defendants further provided Sanders'

grievance submissions and the administrative responses thereto.  Dkt. No. 22-4.  Of the three (3)

grievances, only one, Grievance No. 22-56, addresses the matters raised in Sanders' Complaint.

*Id.* at 10.

Sanders marked Grievance No. 22-56 as "Emergency or Sensitive." *Id.*  The procedure

utilized by DCF for emergency or sensitive grievances allows an inmate to submit a grievance

directly to the reviewing authority without first attempting informal resolution.  Dkt. No. 22-3 at

18.  The procedure provides:

> Upon receipt of a grievance marked "emergency or sensitive," the reviewing
> authority will have 24 hours to determine if it is in fact an emergency or sensitive
> grievance.  If so, an expedited review will be conducted and a response provided to
> the inmate/offender within 48 hours of receipt, excluding weekends and holidays.
> The inmate/offender may appeal that response.  The ARA will provide an expedited
> response to all verified sensitive grievances within 72 hours of receipt of the
> grievance, excluding weekends and holidays.

*Id.* at 19.  DCF's Grievance Policy prescribes that grievances and grievance appeals must adhere

to certain requirements as to form and substance.  *Id.* at 8-19.  A grievance or appeal that does not

adhere to policy requirements "may not be answered and the inmate will be notified of the

4

improper filing." *Id.* at 12, 16.

Grievance No. 22-56 is dated February 10, 2022, and was received by the reviewing authority on February 14, 2022. Dkt. No. 22-4 at 10. On February 15, 2022, the reviewing authority returned the grievance unanswered due to Sanders' failure to fill the form out "completely or correctly." *Id.* at 8-9 (noting Sanders' failure to "[f]ill out the bottom of the grievance form"). Sanders was provided ten (10) days to resubmit his grievance with the required corrections. *Id.* at 9. Sanders resubmitted his grievance within the time allotted, requesting that the alleged December 25, 2021, incident be "investigated and the proper action taken so [Rideout] can't do it to [him] or anyone else she has a problem with." *Id.* at 7. He requested there "be a keep away put in place between [Sanders and Rideout] d[ue] to concerns of retaliation." *Id.*

The reviewing authority rendered the following decision on February 22, 2022: "Inmate Sanders felt that his life was in danger from an incident that happened on 12/25/2021 regarding a staff member that let other inmate[s] threaten his life. After further review of the matter, partial relief is granted in that the claim is being investigated." *Id.* at 6. Sanders appealed the decision to the Administrative Review Authority (ADA), which returned the grievance unanswered due to deficiencies in form and substance. *Id.* at 5. Sanders was provided ten (10) days from his receipt of the ADA's determination to properly resubmit his grievance appeal. *Id.* The ADA's form is dated March 2, 2022, and appears to have been received by Sanders on March 10, 2022. *Id.* Sanders did not resubmit his appeal. Dkt. No. 22-2, at 6.

Sanders initiated this federal civil rights action on February 24, 2022, prior to the ADA's determination of his appeal. Dkt. No. 1, at 8. "The exhaustion requirement of the PLRA requires that a prisoner's claim be administratively exhausted prior to the filing of the action in court, rather than during the pendency of that action." *Price v. Shinn*, 178 F. App'x 803, 804-05 (10th Cir.

2006);[2] *see Steele v. Fed. Bureau of Prisons*, 355 F. 3d 1204, 1207 (10th Cir. 2003) ("[R]esort to a prison grievance process must precede resort to a court." (internal quotation marks omitted)); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (explaining that the PLRA "requires exhaustion before the filing of a complaint and that a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation").[3]

Even if this were not so, the record establishes that Sanders did not complete the grievance process, as he failed to submit an appeal that complied with grievance policy requirements and then failed to resubmit his appeal with corrections when provided that opportunity. *See Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("[A]n inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). Thus, the evidence demonstrates that Sanders failed to effectuate proper exhaustion as to the claims raised in his pleading.

Because Defendants have met their initial burden, Sanders must "demonstrate with specificity the existence of a disputed material fact" to avoid summary judgment on his claims. *Hutchinson*, 105 F.3d at 564. Sanders makes the conclusory statement that his efforts to exhaust were "h[i]ndered at every try," but he provides no evidence suggesting that his efforts were

---

[2] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[3] The record does not indicate the date Sanders submitted his appeal to the ADA. The earliest possible date of submission, however, is February 23, 2022, the date on which Sanders received the reviewing authority's decision on his grievance. Dkt. No. 22-4, at 6. Even if the Court were to assume Sanders submitted his appeal on this date, the ADA's response would not have been due until February 28, 2022, four days after he initiated this § 1983 action. Dkt. No. 22-3, at 19.

thwarted or that administrative remedies were otherwise rendered unavailable.[4]  Dkt. No. 23, at 4.

Accordingly, Sanders has failed to demonstrate a material factual dispute as to his failure to

exhaust administrate remedies, and Defendants are entitled to judgment as a matter of law.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Dkt.

No. 22) is GRANTED.  A separate judgment shall be entered.

Dated this 20th day of June 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[4] Though the record indicates DCF's investigation of Sanders' claims continued beyond the date Sanders received a response to his grievance, *see* Dkt. No. 22-4, at 6 (grievance decision granting "partial relief . . . in that the claim is being investigated"), the continued investigation does not equate to a failure to respond to Sanders' grievance.  *See Jernigan*, 304 F.3d at 1032 (explaining that "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable").  If Sanders felt that continued investigation, rather than immediate resolution, was unsatisfactory, he had the opportunity under the policy to appeal the decision.   *See* Dkt. No. 22-3, at 19; *Woodford*, 548 U.S. at 90 ("As a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." (alteration and internal quotation marks omitted)); *Brooks v. Robinson*, No. 22-6057, 2022 WL 17333378, at *3 (10th Cir. Nov. 30, 2022) (unpublished) ("[T]he partial resolution of [the prisoner's] grievance at an intermediate stage did not relieve him of the obligation to complete the administrative process.").  Further, because Sanders did appeal the determination, though improperly, he cannot demonstrate detrimental reliance on the reviewing authority's representation that his claims would be further investigated.  *See Jernigan*, 304 F.3d at 1033 (declining to apply equitable estoppel on exhaustion defense where prisoner could not "show detrimental reliance on prison officials, . . . having been given an opportunity to cure").